# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID F. KELLY BEY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-1241** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **WILLIAM BECHTOLD**, *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to Defendants' motions to dismiss (Doc. Nos. 34, 36) *pro se* Plaintiff David F. Kelly Bey ("Plaintiff")'s amended complaint (Doc. No. 29). The motions are fully briefed and ripe for disposition.

## I.    BACKGROUND

On July 21, 2020, Plaintiff, who was then detained at the Franklin County Jail ("FCJ") in Chambersburg, Pennsylvania, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Warden William Bechtold ("Bechtold"), Deputy Warden Michelle Weller ("Weller"), Chief Health Care Administrator Justin H. Lensbower ("Lensbower"), and Dr. Kneal ("Kneal"). (Doc. No. 1.)  After service of the complaint, Defendants Lensbower and Kneal filed an answer (Doc. No. 12) and Defendants Bechtold and Weller filed a motion to dismiss (Doc. No. 27).  In response, Plaintiff filed an amended complaint.  (Doc. No. 29.)

In his amended complaint, Plaintiff alleges that from May 6, 2019 through July 21, 2020, he stopped Defendant Weller and told her that he needed a religious diet. (Doc. No. 29 ¶ 11.) Plaintiff told Defendant Weller that his faith required that he eat Halal meat and forbade vegetarianism. (*Id.* ¶¶ 12-14.) Plaintiff alleges that Defendant Weller told him that she did not have time to discuss the matter and walked away. (*Id.* ¶¶ 15-17.) Plaintiff later spoke with Chaplain Isaac Burkholder, who advised him to submit a religious accommodation request. (*Id.* ¶ 18.) Plaintiff did so, and deputy Weller denied the request. (*Id.* ¶ 19.) Plaintiff subsequently exhausted his administrative remedies, and his grievance was denied at all levels of review. (*Id.* ¶¶ 20-22.)

Plaintiff further avers that through November 18, 2019 through July 21, 2020, he submitted a sick call slip to see the dentist contracted to serve FCJ. (*Id.* ¶ 23.) Plaintiff was seen by a nurse who scheduled him to see the dentist. (*Id.*) A week later, Plaintiff saw Defendant Kneal. (*Id.* ¶ 25.) Plaintiff told Defendant Kneal that his "lower teeth were cutting into his top gum when he tried to chew his food." (*Id.* ¶ 26.) Defendant Kneal acknowledged Plaintiff's issue but "refused to schedule [him] for denture construction." (*Id.* ¶ 27.) Plaintiff told Defendant Kneal that he was experiencing extreme pain, bleeding and swollen gums, and that he could not eat properly or sleep because of the pain. (*Id.* ¶¶ 28-29.) Defendant Kneal "became argumentative and demanded [that] Plaintiff leave the dental area." (*Id.* ¶ 30.)

Plaintiff subsequently filed a grievance regarding the failure to provide dentures. (*Id.* ¶ 31.) Defendant Lensbower responded, "stating something to the effect about the Plaintiff bring[ing] his dentures to the jail or having the Plaintiff's dentures mailed . . . to the jail." (*Id.*) Plaintiff appealed, and his grievance was denied at both levels of appeal. (*Id.* ¶¶ 32-33.) Plaintiff then filed a second dental sick slip and was seen by the jail nurse. (*Id.* ¶ 34.) Plaintiff told the nurse that he had had upper dentures made when he was incarcerated at SCI Camp Hill in 2015 but that he had been released prior to receiving the dentures. (*Id.* ¶ 35.) Plaintiff asked the nurse to obtain his dental records from SCI Camp Hill. (*Id.*) The nurse told Plaintiff that he would be placed on the dental schedule. (*Id.* ¶ 36.) Plaintiff was subsequently seen by a new dentist, who told Plaintiff that he could not make dentures and that the best he could do was order Orajel treatment. (*Id.* ¶ 37.) According to Plaintiff, FCJ has a policy that does not allow inmates to be provided dentures. (*Id.*) Plaintiff avers that the new dentist acknowledged that he needed upper dentures. (*Id.*)

Based on the foregoing, Plaintiff alleges violations of his First Amendment rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, for Defendants Bechtold and Weller's failure to provide Halal meat. (*Id.* ¶ 40.) He also alleges that Defendants violated his Eighth and Fourteenth Amendment rights by failing to provide adequate

dental care.  (*Id.* ¶¶ 41-42.)  Plaintiff seeks declaratory and injunctive relief, as well as damages.  (*Id.* at 17-24.)

## II.    LEGAL STANDARD

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading."  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  *Id.*  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.

2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## B.    Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."

*See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

### A. Claims for Declaratory and Injunctive Relief

As noted *supra*, Plaintiff seeks declaratory and injunctive relief with respect to his claims. Plaintiff's release from incarceration, however, moots such claims for relief. *See Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993). Plaintiff's claims for declaratory and injunctive relief will, therefore, be dismissed.

### B. First Amendment Free Exercise Claim

#### 1. Plausibility of Plaintiff's Claim

Defendants Bechtold and Weller first assert that Plaintiff's First Amendment free exercise claim regarding the denial of Halal meat is subject to dismissal because it is not plausibly pled. (Doc. No. 37 at 7.) They assert that, pursuant to *Turner v. Safley*, 482 U.S. 78 (1987), the amended complaint is "devoid of any allegations that refusing to provide Plaintiff with a specific Halal meal plan that includes 'Halal

meat' has no reasonable connection to a penological interest." (Doc. No. 37 at 8-9.) Under *Turner*, a court considering whether a prison regulation or policy is valid must consider: (1) whether the regulation or policy is rationally related to the governmental interest at stake; (2) whether the inmate retains alternative means to exercise the constitutionally protected right; (3) the impact accommodating the asserted right will have on guards and other inmates and the allocation of prison resources generally; and (4) the absence of ready alternatives. 482 U.S. at 89-90. However, "such a multi-faceted fact-intensive test as *Turner*'s does not generally lend itself to being addressed in the context of a motion to dismiss." *See Brothers v. Lawrence Cty. Prison Bd.*, No. 06-1285, 2008 WL 146828, at *5 & n.7 (W.D. Jan. 14, 2008). Accordingly, the Court will not grant the motion to dismiss Plaintiff's First Amendment claim on the basis that he has failed to allege facts satisfying the *Turner* standard.

## 2. Claim and Issue Preclusion

Defendants next argue that Plaintiff's Free Exercise claim should be dismissed because it is barred by claim and issue preclusion. (Doc. No. 37 at 10-14.) In 2013, Plaintiff filed suit against then-Warden Daniel Keen, Defendant Weller, Director of Treatment Jessica Sterner-Lensbower, and Chaplain Isaac Burholder, alleging, *inter alia*, that they denied him a diet "that conformed to his religious beliefs." *Kelley Bey v. Keen*, No. , 3:13-cv-1942, 2014 WL 3563475, at *1

(M.D. Pa. July 17, 2014). The late Honorable A. Richard Caputo granted the defendants' motion to dismiss and/or for summary judgment. *Id.* With respect to Plaintiff's First Amendment claim regarding his diet, the Court concluded that, after consideration of the *Turner* factors, Plaintiff's First Amendment rights had not bee violated. *Id.* at *15-17.) Specifically, the Court noted that the diets provided at the FCJ complied with Plaintiff's religious requirements and that FCJ had structured their food service programs based upon the legitimate penological interests of "improv[ing] efficiency and security and to contain costs." *Id.* at *16. Moreover, Plaintiff had alternate means of practicing his religion, and the record reflected that not providing specific Halal meals was reasonable because implementing a specific Halal diet would be cost prohibitive and the diets offered were designed to accommodate "all or almost all religions." *Id.* Finally, Plaintiff had not "identified any ready alternatives that would fully accommodate his rights at a *de minimis* cost." *Id.*

"For claim prelusion to apply, a defendant must show there has been '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Smith v. Kershentsef*, 843 F. App'x 447, 449 (3d Cir. 2021) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). "[R]es judicata bars a claim litigated between the same parties or their privies in earlier litigation where the claim arises from the

same set of facts as a claim adjudicated on the merits in the earlier litigation." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014). Here, however, the Court cannot conclude that Plaintiff's instant First Amendment claim arises from the same set of facts as the claim previous adjudicated on the merits. Although in both actions Plaintiff claims that he was denied a Halal diet, the denials occurred on two (2) separate occasions that are years apart. The Court, therefore, declines to find that claim preclusion applies to bar Plaintiff's First Amendment claim.

Collateral estoppel, otherwise known as issue preclusion, bars relitigation of an issue where:

> (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

*Del. River. Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 n.10 (3d Cir. 2002) (quoting *Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992)).

Here, the issue presented in the instant action—whether the denial of a Halal meal plan violated Plaintiff's Free Exercise rights—was decided by the Court in Plaintiff's previous case. The prior decision was a final judgment on the merits. In the previous action, Plaintiff sued Defendant Weller as well as the former Warden, Daniel Keen. Here, Plaintiff has again sued Defendant Weller and the current

Warden, Defendant Bechtold.  The Third Circuit has explained privity to be "merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the [collateral estoppel]." *Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004) (quoting *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990)).  Privity between Defendant Bechtold and former Warden Keen exists because Plaintiff named both of them in their capacities as Warden.  Finally, the prior litigation provided Plaintiff a full and fair opportunity to litigate his Free Exercise claim.  Notably, Plaintiff was directed to file a response to the defendants' motion to dismiss and/or for summary judgment, but failed to do so even after requesting an extension of time.  *See Kelley Bey*, 2014 WL 3563475, at *1.  Thus, the Court will grant Defendants Bechtold and Weller's motion to dismiss Plaintiff's First Amendment Free Exercise claim on the basis that issue preclusion applies.

### C.     RLUIPA Claims

Section 3 of RLIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling interest," and does so by the "least restrictive means."  42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise

of religion, whether or not compelled by, or central to, a system of religious belief."
42 U.S.C. § 2000cc-5(7)(A); *see also Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005).
As an initial matter, Plaintiff cannot recover money damages from Defendants
Bechtold and Weller in their individual capacities under RLUIPA. *See Sharp v.
Johnson*, 669 F.3d 144, 155 (3d Cir. 2012). Any such claims, therefore, will be
dismissed. Plaintiff can, however, seek monetary damages from Defendants
Bechtold and Weller in their official capacities. *See Ealy v. Bechtold*, No. 3:20-cv-
103, 2021 WL 858834, at *10 (M.D. Pa. Mar. 8, 2021); *Kelley Bey*, 2014 WL
3563475, at *13 (noting that official capacity RLUIPA claims against county
officials were not barred by the Eleventh Amendment, which only applies to states).

Under RLUIPA, a plaintiff must allege that his religious exercise has been
substantially burdened by the challenged conduct. *See Washington v. Klem*, 497
F.3d 272, 277-78 (3d Cir. 2007).

> [A] substantial burden exists where: (1) a follower is forced to choose
> between following the precepts of his religion and forfeiting benefits
> otherwise generally available to other inmates versus abandoning one
> of the precepts of his religion in order to receive a benefit; or (2) the
> government puts substantial pressure on an adherent to substantial
> modify his behavior to violate his beliefs.

*Id.* at 280. Defendants assert that Plaintiff's RLUIPA claim is also barred under
claim and issue preclusion. (Doc. No. 37 at 14-16.) In 2014, the late Judge Caputo
determined that the denial of a special Halal diet did not violate Plaintiff's RLUIPA
rights because the defendants "presented unrebutted evidence that the General Plan

and the Vegetarian Plan would have satisfied Kelly Bey's religious diet concerns." *Kelley Bey*, 2014 WL 3563475, at *20. Moreover, Plaintiff had not demonstrated that "he was either forced to abandon one of the precepts of his religion or that the defendants put substantial pressure on him to substantially modify his behavior and to violate his beliefs." *Id.* Judge Caputo noted that the General Plan served at the FCJ did not contain "pork, pork by-products, or pork derivatives, and contains no blood, no carnivorous animals, no reptiles, no insects, and no alcohol." *Id.* at *6. The General Plan met the guidelines for a Muslim religious diet and "was chosen after deliberation and consideration of the most cost-effective manner to satisfy the dietary needs of the broadest possible segment of the inmate population using a single meal plan." *Id.* The Vegetarian Meal Plan, another diet offered by the FCJ, "include[d] only foods which are halal." *Id.* at *7. For the reasons noted *supra* in the Court's discussion of Plaintiff's First Amendment claim, the Court concludes that Plaintiff's RLUIPA claim is also barred by issue preclusion. The Court, therefore, will grant Defendants Bechtold and Weller's motion to dismiss with respect to Plaintiff's RLUIPA claims.

### D.  Eighth and Fourteenth Amendment Claims

The Third Circuit has held that the "deliberate indifference" standard employed when analyzing denial of medical care claims under the Eighth Amendment also applies to detainees under the Fifth and Fourteenth Amendments.

*See Simmons v. City of Phila.*, 947 F.2d 1042, 1067 (3d Cir. 1991). In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly,

"absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serous medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.* Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897

F.2d at 108-10. Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-25 (7th Cir. 1996); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

### 1. Defendant Kneal

In support of dismissal, Defendant Kneal asserts that "either Plaintiff has dentures and refuses to have them brought to the prison or Plaintiff has not had dentures for an unknown period of time which shows he is not suffering from a serious medical condition." (Doc. No. 35 at 11.) He maintains that, "at most, Plaintiff experienced a delay before he was provided Orajel for his dental complaints. A mere delay does not equate to deliberate indifference." (*Id.*)

"Dental care is one of the most important medical needs of inmates." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). The "objective component [of an Eighth Amendment

claim] is satisfied where a prisoner alleges unnecessary pain associated with delay in receiving medical care." *See Bowlds v. Turn Key Health*, No. CIV-19-726-SLP, 2020 WL 730876, at *3 (W.D. Okla. Feb. 13, 2020) (citations omitted). "A three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983." *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995).

In his amended complaint, Plaintiff avers that through November 18, 2019 through July 21, 2020, he submitted a sick call slip to see the dentist contracted to serve FCJ. (Doc. No. 29 ¶ 23.) Plaintiff was seen by a nurse who scheduled him to see the dentist. (*Id.*) A week later, Plaintiff saw Defendant Kneal. (*Id.* ¶ 25.) Plaintiff told Defendant Kneal that his "lower teeth were cutting into his top gum when he tried to chew his food." (*Id.* ¶ 26.) Defendant Kneal acknowledged Plaintiff's issue but "refused to schedule [him] for denture construction." (*Id.* ¶ 27.) Plaintiff told Defendant Kneal that he was experiencing extreme pain, bleeding and swollen gums, and that he could not eat properly or sleep because of the pain. (*Id.* ¶¶ 28-29.) Defendant Kneal "became argumentative and demanded [that] Plaintiff leave the dental area." (*Id.* ¶ 30.) The Court finds that Plaintiff has set forth a plausible Eighth and Fourteenth Amendment claim regarding inadequate dental care against Defendant Kneal at this time. Accordingly, the Court will deny the motion to dismiss with respect to such claim.

### 2.     Defendants Lensbower, Weller, and Bechtold

In his amended complaint, Plaintiff avers that Defendants Lensbower, Weller, and Bechtold denied his grievances regarding the denial of upper dentures.  (Doc. No. 29 ¶¶ 31-33.)  Defendants assert that any Eighth and/or Fourteenth Amendment claims against them are subject to dismissal because their review of Plaintiff's grievance does not establish the requisite personal involvement to state a claim for relief.  (Doc. Nos. 35 at 10, 37 at 17.)  The Court agrees.  The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance does not establish the involvement of officials and administrators in any underlying constitutional deprivation."  *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.").  Moreover, nothing in Plaintiff's amended complaint alleges that Defendants Lensbower, Weller, and Bechtold possessed actual knowledge or a reason to believe that "prison doctors or their assistants [were] mistreating (or not treating)" him.  *Spruill*, 372 F.3d at 236.  The Court, therefore, will grant the motions to dismiss with respect to Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Lensbower, Weller, and Bechtold.

### E.     Official Capacity Claims

Plaintiff suggests that he has brought suit against Defendants in their official capacities as well.  (Doc. No. 29 at 4.)  Official capacity claims against municipal officials are indistinguishable from claims against the municipal entity that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978))).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  In the instant case, Plaintiff fails to allege that municipal custom or policy caused the alleged constitutional violations.  Moreover, any official capacity claims based upon alleged violations of his First Amendment

and RLUIPA claims would be barred by issue preclusion, as set forth *supra*. Accordingly, the Court will dismiss Plaintiff's official capacity claims against Defendatns.

### F. Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing, the Court concludes that "giving [Plaintiff] further leave to amend [his claims against Defendants Bechtold, Weller, and Lensbower, as well as his official capacity claims] would be futile." *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483

(3d Cir. 2019). The above-captioned action, therefore, will proceed only as to Plaintiff's Eighth and Fourteenth Amendment individual capacity claims against Defendant Kneal.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants Bechtold and Weller's motion to dismiss (Doc. No. 36) in its entirety. The Court will grant in part and deny in part the motion to dismiss (Doc. No. 34) filed by Defendants Lensbower and Kneal. The motion will be granted as to Plaintiff's claims against Defendant Lensbower and official capacity claims against Defendant Kneal, and denied as to Plaintiff's individual capacity claims against Defendant Kneal. Plaintiff will not be permitted to file a second amended complaint, and the above-captioned action will proceed as to his Eighth and Fourteenth Amendment claims against Defendant Kneal. An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Dated: June 22, 2021