IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID F. KELLY BEY,<br>    Plaintiff<br><br>    v.<br><br>WILLIAM BECHTOLD, <u>et al.</u>,<br>    Defendants | No. 1:20-cv-1241<br><br>(Judge Rambo) |

## **MEMORANDUM**

Presently before the Court is Defendant David Kneal, Jr. DMD ("Defendant Kneal")'s motion for summary judgment. The motion is ripe for the Court's review. For the reasons that follow, the Court will grant Defendant Kneal's motion.

## I.    INTRODUCTION

Plaintiff David F. Kelly Bey ("Plaintiff"), who is proceeding <u>pro se</u> and <u>in forma pauperis</u>, is currently incarcerated at the Philadelphia Community Corrections Center #2. (Doc. No. 81.) He has brought this civil rights action pursuant to 42 U.S.C. § 1983, regarding events that purportedly occurred at the Franklin County Jail ("FCJ") in Chambersburg, Pennsylvania, where he was previously incarcerated. (Doc. No. 1.) Named as Defendants are individuals who worked at FCJ during the relevant period of time: Warden William Bechtold ("Bechtold"); Deputy Warden Michelle Weller ("Weller"); Chief Health Care Administrator Justin H. Lensbower ("Lensbower"); and Defendant Kneal. (<u>Id.</u>)

After service of the complaint, Defendants Lensbower and Kneal filed an answer (Doc. No. 12), and Defendants Bechtold and Weller filed a motion to dismiss (Doc. No. 27). In response, Plaintiff filed an amended complaint (Doc. No. 29), alleging violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution based upon the alleged denial of adequate dental care, as well as violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq., based upon the alleged denial of Halal meat. (Id.) As for relief, Plaintiff seeks declaratory and injunctive relief, as well as damages. (Id.)

By Memorandum and Order dated June 22, 2021, the Court granted in part and denied in part Defendants' motions to dismiss Plaintiff's amended complaint. (Doc. Nos. 67, 68.) Specifically, the Court granted, in its entirety, the motion filed by Defendants Bechtold and Weller. (Id.) The Court also granted, in part, the motion filed by Defendants Lensbower and Kneal with respect to Plaintiff's Eighth and Fourteenth Amendment claims against Defendant Lensbower and with respect to Plaintiff's official capacity claims against Defendant Kneal. (Id.) The Court denied, however, the motion with respect to Plaintiff's Eighth and Fourteenth Amendment individual capacity claims against Defendant Kneal. (Id.) Because the Court had resolved Plaintiff's claims against Defendants Bechtold, Weller, and Lensbower, and because Plaintiff was not granted any further leave to amend his claims against Defendants Bechtold, Weller, and Lensbower, the Court dismissed

these Defendants from the complaint and directed the Clerk of Court to terminate them from this action. (Id.) Thus, this action is only proceeding on Plaintiff's Eighth and Fourteenth Amendment individual capacity claims against Defendant Kneal. (Id.)

Following the Court's ruling on Defendants' motions, Defendant Kneal filed his answer with affirmative defenses on June 25, 2021 (Doc. No. 69), and the parties engaged in discovery. It is on the heels of that discovery, that Defendant Kneal has filed a motion for summary judgment (Doc. No. 75), along with a statement of material facts and a brief in support thereof (Doc. Nos. 77, 78).

In response to Defendant Kneal's motion, Plaintiff requested two (2) extensions of time to file a response to Defendant Kneal's motion for summary judgment. (Doc. Nos. 79, 82.) The Court granted both of those requests (Doc. Nos. 80, 83) and directed Plaintiff to file his response on or before July 8, 2022 (Doc. No. 83). As reflected by the Court's docket, however, that deadline has long since passed, and Plaintiff has neither filed a response to Defendant Kneal's motion nor sought an additional extension of time to do so. Thus, the Court finds that Defendant Kneal's motion is ripe for the Court's disposition.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). And, a disputed material fact is "genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" See Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party, who may not rest upon the unsubstantiated allegations or denials

4

of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact. See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial[,]" summary judgment is proper. See id. at 322. Summary judgment is also proper if the nonmoving party provides evidence that is "merely colorable" or that "is not significantly probative[.]" See Gray, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]" See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (citing Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006)); M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 125 (3d Cir. 2020) (stating that, when reviewing a motion for summary judgment, courts are to "view the evidence in the light most favorable to the non-moving party").

## III.  DISCUSSION

### A.  Statement of Material Facts

As discussed above, Defendant Kneal has filed a motion for summary judgment.  (Doc. No. 75.)  Under the Court's Local Rules, a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  See M.D. Pa. L.R. 56.1.  In addition, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement], as to which [the non-moving party] contend[s] that there exists a genuine issue to be tried."  See id.  All material facts set forth in the moving party's statement "will be deemed to be admitted unless controverted by [the non-moving party's statement]."  See id.

In accordance with the Court's Local Rules, Defendant Kneal filed a statement of material facts in support of his motion for summary judgment.  (Doc. No. 77.)  Plaintiff, however, did not file his own statement of material facts, responding to the numbered paragraphs set forth in Defendant Kneal's statement.  Thus, under the Court's Local Rules, Defendant Kneal's facts are deemed admitted since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it

6

affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in *Celotex Corp. v. Catrett*, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 1:13-cv-0387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015), aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016) (emphasis in original) (citation omitted).

The material facts, as set forth by Defendant Kneal's statement of facts, are as follows. This matter arises from one of Plaintiff's incarcerations in the FCJ. (Doc. No. 77 ¶ 1.) Defendant Kneal is a dentist licensed to practice dentistry in the Commonwealth of Pennsylvania. (Id. ¶ 2.) Defendant Kneal was employed by PrimeCare Medical, Inc. ("PrimeCare") to provide dental services to inmates incarcerated in facilities in which PrimeCare had a contract to provide mental and dental services. (Id. ¶ 3.) As part of his employment with PrimeCare, Defendant Kneal provided dental services to inmates incarcerated at the FCJ. (Id. ¶ 4.)

Inmates incarcerated at the FCJ are usually not incarcerated there for extended periods of time. (Id. ¶ 6.) It is not possible to fabricate dentures in the FCJ. (Id. ¶ 7). Additionally, dentures are generally not fabricated for inmates incarcerated in the FCJ. (Id. ¶ 5). The fabrication of dentures could take as many as eight (8) separate visits with an outside dentist. (Id. ¶ 8.) It is difficult, if not impossible, to

7

find an outside dentist to fabricate dentures for inmates in the FCJ due to the time necessary to complete the process and the logistics involved in having an inmate transported to so many outside appointments. (Id. ¶ 9.) In addition, there is no guarantee that the dentures will be effective after fabrication. (Id. ¶ 10.) Thus, dentures are not fabricated for inmates unless an inmate has lost medically-significant weight or cannot swallow effectively. (Id. ¶ 11.) Over-the-counter pain relievers and/or Orajel can be provided, however, to the inmate if the inmate is suffering from pain, and an antibiotic can be prescribed if the inmate has an infection. (Id. ¶ 12.)

On March 26, 2019, Plaintiff was weighed, and his weight was noted to be 224 pounds. (Id. ¶ 14.) Notwithstanding that Plaintiff did not have an upper denture, his weight consistently went up to a weight of two-hundred and sixty-five (265) pounds as of August 11, 2020. (Id. ¶ 15.) Plaintiff has gained over forty (40) pounds in less than two years. (Id. ¶ 16.)

According to Defendant Kneal, he does not establish a practice, policy, or procedure for the provision of dental care at the FCJ. (Id. ¶ 13.) In addition, he only evaluated Plaintiff on one occasion. (Id. ¶ 17.) On November 8, 2019, Plaintiff had requested dentures when he was examined by Defendant Kneal. (Id. ¶ 18.) Plaintiff's closest documented weight to this examination was on November 2, 2019, when Plaintiff was documented as weighing two-hundred and forty-seven (247)

pounds. (Id. ¶ 19.) Defendant Kneal noted that Plaintiff was missing all of his upper teeth (id. ¶ 20), but that there was no indication that Plaintiff's upper mouth was bleeding, swollen, or showing injury in any way (id. ¶ 21).[1] Defendant Kneal explained to Plaintiff that an upper denture could not be fabricated at the FCJ (id. ¶ 22), and so Defendant Kneal suggested that Plaintiff request a medical furlough from the prison to seek an upper denture (id. ¶ 23). Defendant Kneal also suggested that if Plaintiff had a denture at home, it could be brought to the facility for his use. (Id. ¶ 24.) Defendant Kneal finally suggested that Plaintiff could seek to have the mold, which had apparently been created when he was incarcerated at State Correctional Institution Camp Hill, located. (Id. ¶ 25.) Plaintiff, however, rejected all of these suggestions, and he instead threatened to bring a lawsuit. (Id. ¶ 26.)

### B.    Plaintiff's Claims Against Defendant Kneal

Plaintiff has filed his amended complaint pursuant to 42 U.S.C. § 1983, claiming that Defendant Kneal violated his constitutional rights while incarcerated at the FCJ based upon the alleged denial of adequate dental care. (Doc. No. 29.) Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

---

[1] Defendant Kneal's medical notes state that Plaintiff's upper mouth exhibited "full healing" and that there were "no signs of recent ext's or healing sites." (Doc. No. 77-3 at 3.)

> rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

At the time Plaintiff commenced this Section 1983 action, he was a pre-trial detainee at the FCJ. (Doc. No. 1.) A pretrial detainee's claim of inadequate medical care arises under the Fourteenth Amendment, rather than the Eighth Amendment. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). Nevertheless, the United States Supreme Court has held that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great" as those afforded to convicted prisoners under the Eighth Amendment. See id. (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)).

Thus, in the context of claims for inadequate medical care, the United States Court of Appeals for the Third Circuit Court ("Third Circuit") has "found no reason to apply a different standard than that set forth in Estelle [v. Gamble, 429 U.S. 97

10

(1976)] (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." See id. As such, the Court will analyze Plaintiff's claim for inadequate medical care under the framework of the Eighth Amendment. See id. at 582 (evaluating the pre-trial detainee's "Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment . . ." (citation omitted)).

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

"[T]he concept of a serious medical need, as developed in *Estelle*, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring

11

treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197 (citation omitted).

In the instant motion for summary judgment, Defendant Kneal contends that there is an absence of evidence in the summary judgment record that he exhibited any deliberate indifference to a serious medical need. (Doc. No. 78 at 12.) In support, Defendant Kneal argues that he was simply following the practice at FCJ— that dentures would not be fabricated without such a medical need. (Id.) And, Defendant Kneal submits that, based upon his evaluation of Plaintiff, he had no such need. (Id.) Thus, Defendant Kneal requests the Court to grant summary judgment in his favor and to dismiss this action with prejudice. (Id.)

As set forth above, Plaintiff has not opposed Defendant Kneal's motion for summary judgment, despite being granted two (2) extensions of time to do so. (Doc. Nos. 80, 83.) Thus, per the Court's Local Rules, Defendant Kneal's material facts are deemed admitted. See M.D. Pa. L.R. 56.1 (explaining that all material facts set forth in the moving party's statement "will be deemed to be admitted unless controverted by [the non-moving party's statement]").

In pertinent part, those material facts establish that Defendant Kneal only evaluated Plaintiff on one occasion (i.e., on November 8, 2019) and that, although Plaintiff had requested upper dentures during this evaluation, there was no indication that Plaintiff's upper mouth was bleeding or swollen or that it showed any injury.[2] Those facts also establish that Defendant Kneal had explained to Plaintiff that an upper denture could not be fabricated at the FCJ and, so, Defendant Kneal made the following suggestions to Plaintiff: that he seek a medical furlough from the prison to obtain an upper denture; that, if Plaintiff had a denture at home, the denture could be brought to the jail for his use; and, finally, that Plaintiff could seek to have his prior mold located, which had apparently been created for him while he was incarcerated at SCI Camp Hill. Plaintiff, however, rejected all of these suggestions.

---

[2] Defendant Kneal's medical notes state that Plaintiff's upper mouth exhibited "full healing" and that there were "no signs of recent ext's or healing sites." (Doc. No. 77-3 at 3.)

13

In light of these undisputed facts, the Court finds that Defendant Kneal has met his initial summary judgment burden of showing the Court "the basis for [his] motion, and identifying those portions of [the record], which [he] believes demonstrate the absence of a genuine issue of material fact." See Celotex Corp., 477 U.S. at 323. In particular, Defendant Kneal has shown that there is an absence of evidence that he was actually aware of a substantial risk of serious harm to Plaintiff when he evaluated Plaintiff on November 8, 2019 (or at any other point for that matter), or that he disregarded that risk. See Dooley, 957 F.3d at 375 (explaining that prison officials act with deliberate indifference when they were "actually aware or knew of a substantial risk of serious harm" and "they disregard that risk" (citing Farmer, 511 U.S. at 837)). Defendant Kneal has also shown that there is an absence of evidence that he had diagnosed Plaintiff with any sort of condition or disease, otherwise knew of the existence of such a diagnosis, or drew the conclusion that greater treatment was necessary in order to avoid substantial and unnecessary suffering for Plaintiff. See id. at 374 (explaining that a serious medical need exists where the "failure to treat can be expected to lead to substantial and unnecessary suffering, and a doctor has diagnosed the condition, or the need for treatment would be obvious to a lay person" (citation, and internal citation and quotation marks omitted)).

Thus, for all of these reasons, the Court finds that Defendant Kneal has met his initial burden in showing the Court that there is an absence of evidence that he was deliberately indifferent to a serious medical need.  As a result, the burden shifts to Plaintiff, who must go beyond his pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[,]" to show the Court that there is a genuine dispute of material fact as to whether Defendant Kneal acted with deliberate indifference to a serious medical need.  See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324.  Plaintiff, however, has not done this.  Consequently, the Court finds that Plaintiff has failed to satisfy his burden of creating a genuine dispute of material fact and, as such, summary judgment is proper.[3]

---

[3]  It is not lost upon the Court that there have been instances in which Eighth Amendment claims based upon an inmate's request for dentures have survived summary judgment.  The Court notes, however, that such cases are distinguishable, and materially so, from the one that is currently pending against Defendant Kneal. See, e.g., Young v. Kazmerski, 266 F. App'x 191, 193-94 (3d Cir. 2008) (unpublished) (finding that the record supported an inmate's claim that he had a serious medical need when the prison staff knew that the inmate could not eat or sleep properly because his bottom teeth were cutting into his gums, but the prison waited eleven months to provide dentures to the inmate); Maclary v. Holwerda, 595 F. Supp. 2d 348, 353-54 (D. Del. 2009) (denying summary judgment where the serious nature of the inmate's dental condition, including severe periodontal disease, the lengthy delay in providing the inmate dentures, and the non-medical reasons for

## IV. CONCLUSION

To conclude, the Court will grant Defendant Kneal's motion for summary judgment, and the Court will enter judgment in his favor. An appropriate Order follows.

s/ Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: August 29, 2022

---

the delay, raised questions as to whether the defendant-doctor was deliberately indifferent to the inmate's serious medical need).